UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

THERON HUNTER,

        Plaintiff,

v.

UNKNOWN CUNNINGHAM, et al.,

        Defendants.
_____/

Case No. 1:24-cv-415

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought under 42 U.S.C. § 1983 by a former state prisoner who is proceeding *in forma pauperis*. Plaintiff's complaint is subject to dismissal if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Felver and Vanderheuvel. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendants Gaskill and Cunningham. The Court will serve the complaint against Defendants Gaskill and Cunningham with respect to Plaintiff's retaliation claims against them.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently on parole and resides in Ann Arbor, Michigan. *See* MDOC Offender Tracking Information Service, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=441110. The events about which he complains, however, occurred while he was confined at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. (ECF No. 1, PageID.1.) Plaintiff sues Sergeant Unknown Cunningham and Corrections Officers Unknown Gaskill, Unknown Felver, and Unknown Venderheuvel in their individual capacities. (*Id.*, PageID.5–6.)

Plaintiff alleges that on November 9, 2020, at 9:00 p.m., a prisoner keyed himself into Plaintiff's cell and introduced himself. The prisoner informed Plaintiff that he had just been released from a Covid-19 quarantine. Plaintiff noted that the prisoner appeared to be ill and that "his nose was running like a faucet." (*Id.*, PageID.7.) Plaintiff told the prisoner that he should have been taken to the step-down unit. (*Id.*)

At 9:25 p.m., Plaintiff approached Defendant Gaskill to express his concerns about being exposed to an inmate who had just been released from quarantine, which was against protocol. (*Id.*, PageID.8.) Plaintiff also pointed out that there were open beds in the step-down unit next door. (*Id.*) Defendant Gaskill then told Plaintiff to place his hands behind his back and wrote a retaliatory class 2 misconduct on Plaintiff for refusing a direct order to lock with his new roommate. (*Id.*) Plaintiff was taken to segregation. (*Id.*)

Shortly thereafter, Defendant Cunningham reviewed Plaintiff on the misconduct and Plaintiff reiterated his concerns regarding being housed with an inmate who had just been released from quarantine. Plaintiff states that Defendant Cunningham retaliated against Plaintiff for his

verbal complaint by upgrading the charge to a class 1 misconduct. (*Id.*, PageID.9.) Plaintiff was then left in segregation because "class 1 misconducts do not have a bond." (*Id.*)

On November 10, 2020, Plaintiff tested positive for Covid-19. (*Id.*) On November 13, 2020, Defendant Felver came to Plaintiff's cell and asked him if he wanted to go to court.[1] Plaintiff stated that he did. Defendant Felver later came back to Plaintiff's cell and asked if he was ready to go to court and Plaintiff stated that he was ready. Defendant Felver then opened the door to the cell next to Plaintiff's and took another inmate to court. (*Id.*) Plaintiff heard Defendant Felver taking other prisoners to court and waited for Defendant Felver to return. (*Id.*, PageID.10.) Eventually Plaintiff stopped Defendant Felver when he was passing his cell and asked when he would be going to court. Defendant Felver responded that because Plaintiff had refused, he would be going on the following Monday. Plaintiff stated that he had not refused and wished to be taken to "court," but his protests were unsuccessful. (*Id.*) Plaintiff states that Defendant Vanderheuvel was present during these interactions, but did not intervene. (*Id.*) Plaintiff notes that neither Defendant Felver or Defendant Vanderheuval were wearing brown smocks or face shields, which are required to take Covid-19 positive prisoners out of their cells, indicating that they never planned to take Plaintiff to court. (*Id.*) Plaintiff contends that the denial of his ability to attend "court" resulted in him being found guilty of the upgraded class 1 misconduct. (*Id.*, PageID.3.)

Plaintiff asserts that Defendants acted with deliberate indifference in violation of the Eighth Amendment, retaliated against him and denied him access to the Courts in violation of the First Amendment, and denied him due process in violation of the Fourteenth Amendment. Plaintiff seeks compensatory and punitive damages.

---

[1] Plaintiff claims that the "court" he was to attend on November 13, 2020, was related to his upgraded class 1 misconduct. (ECF No. 1, PageID.3.)

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Statute of limitations

Initially the Court notes that Plaintiff's claims are likely barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 42 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim).

Plaintiff asserts claims arising as of November 13, 2020. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued in 2020. However, he did not sign his complaint until April 13, 2024, five months past Michigan's three-year limit. Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

For prisoners, the statute of limitations is tolled for the period during which a prisoner's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597.

In this case, as noted above, Plaintiff was not a prisoner at the time he filed his complaint. The exhaustion requirement does not apply to a former prisoner who brings a § 1983 claim against state prison officials where the complaint was not filed until after release from prison. *Mabry v. Freeman*, 489 F. Supp. 2d 782, 785 (E.D. Mich. 2007). However, this Court has recently held that where a former prisoner's complaint asserts that he spent months pursuing the exhaustion of his administrative remedies while he was incarcerated, the same equitable tolling principles apply to the former prisoner as to the prisoner. *LaPine v. Gordon*, No. 2:22-CV-60, 2023 WL 2795524, at *3 (W.D. Mich. Feb. 23, 2023), *report and recommendation adopted sub nom. LaPine v. Moore*, No. 2:22-CV-60, 2023 WL 2785555 (W.D. Mich. Apr. 5, 2023). Although Plaintiff does not allege any specific facts regarding the time spent exhausting his administrative remedies in this case, he does assert that he exhausted those remedies. (ECF No. 1, PageID.4.) Therefore, Plaintiff may be entitled to equitable tolling during the time he spent exhausting his administrative remedies. Because the Court cannot determine when the period of exhaustion expired in this case, it cannot conclude that Plaintiff's claims are barred by the statute of limitations at this point in the litigation.

**B.     Access to courts**

Plaintiff claims that Defendants Felver and Vanderheuval denied him access to the courts when they did not take him out of his cell to go to "court" on November 13, 2020, which resulted in Plaintiff being found guilty of the upgraded class 1 misconduct. (ECF No. 1, PageID.3.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–

25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying

8

cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

In this case, Plaintiff states that Defendant Felver refused to take him out of his cell for "court" on November 13, 2020, and that Defendant Vanderheuvel did not intervene on Plaintiff's behalf. Plaintiff states that this prevented him from defending himself from the upgraded misconduct ticket. However, a prisoner's right of access to the courts does not extend to a prison misconduct conviction. *See, e.g., Gardner v. Mich. Dep't of Corr.*, No. 2:16-cv-2, 2018 WL 1177564, at *2–3 (W.D.Mich. Jan. 11, 2018), *R&R adopted*, 2018 WL 1156118 (Mar. 5, 2018), *aff'd*, No. 18-1586, 2019 WL 2246557, at *3 (6th Cir. Feb. 1, 2019). Because Plaintiff fails to allege facts showing that the conduct of Defendants Felver and Venderheuval caused an injury to a direct appeal, a habeas corpus application, or a civil rights claim, his access to the courts claim is properly dismissed.

### C. Due process

Plaintiff also claims that Defendants Felver and Vanderheuvel violated his right to due process when they prevented him from attending "court" on his upgraded misconduct charge on November 13, 2020. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

9

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. At the time of the misconduct charge, Plaintiff was serving indeterminate sentences for offenses committed in 2019 and 2022. *See* MDOC Offender Tracking Information Service, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=441110. An individual who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

10

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff states that he was placed in segregation but fails to allege specific facts regarding the duration or nature of that confinement. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district

court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest). Plaintiff in this case fails to allege any facts regarding the nature and duration of his confinement which would implicate a liberty interest. Because Plaintiff fails to allege that he was deprived of a protected liberty or property right, his due process claims will be dismissed.

### D.     Retaliation

Plaintiff claims that Defendant Gaskill wrote a retaliatory class 2 misconduct on Plaintiff for refusing a direct order to lock with his new roommate and that Defendant Cunningham retaliated against Plaintiff by upgrading it to a class 1 misconduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that he made a verbal complaint to Defendant Gaskill that being housed with an inmate who had just been released from quarantine for Covid-19 violated protocol, and that Defendant Gaskill responded by giving Plaintiff a ticket for refusing to be housed with his assigned cellmate. Plaintiff made the same complaint to Defendant Cunningham when he reviewed the ticket with Plaintiff, and Defendant Cunningham responded by upgrading the ticket to a class

12

1. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Plaintiff's claim that that he received a misconduct ticket, which was upgraded to a class 1 ticket, and was confined to segregation is sufficient to show that Defendants Gaskill and Cunningham took an adverse action against him.

With respect to whether Defendants Gaskill and Cunningham were motivated by a desire to retaliate against Plaintiff for engaging in protected conduct, it is well recognized that

"retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

However, in some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). In this case, Plaintiff states that Defendant Gaskill immediately responded to his verbal complaint by writing a misconduct on him and that Defendant Cunningham also upgraded the misconduct in an immediate response to Plaintiff's verbal complaint. (ECF No. 1, PageID.8.) Therefore, although Plaintiff has by no means proven retaliatory motive, at this stage in the litigation, the Court concludes that Plaintiff's retaliation claims against Defendants Gaskill and Cunningham are not subject to dismissal.

E.     **Eighth Amendment**

Plaintiff contends that Defendants Gaskill and Cunningham violated his Eighth Amendment right to be free from cruel and unusual punishment when he was briefly exposed to a prisoner who had been newly released from quarantine for Covid-19. Specifically, Plaintiff alleges that on November 9, 2020, at 9:00 p.m., he discovered that he was to be housed with a prisoner who had just been released from quarantine and appeared to be ill. (ECF No. 1, PageID.7.) Plaintiff states that he left his cell within 25 minutes and approached Defendant Gaskill to express his concerns about being exposed to an inmate who, according to Plaintiff, should have been placed in a step-down unit. (*Id.*, PageID.8.) Defendant Gaskill then wrote a misconduct ticket on Plaintiff for refusing a direct order to lock with his new roommate and took him to segregation. (*Id.*) Defendant Cunningham subsequently upgraded the misconduct and Plaintiff remained in segregation.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Objective Prong

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the United States Court of Appeals for the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42.

16

> The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

Per *Wilson*, the Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission and health risks posed by the virus, certainly at least with respect to medically vulnerable inmates. Plaintiff does not allege that he is medically vulnerable, but he does allege that he contracted COVID-19 while incarcerated at ICF. The Court therefore assumes, without deciding, that Plaintiff's assertion that he was exposed to Covid-19 has satisfied the objective prong of the deliberate indifference test.

### 2.     Subjective Prong

However, Plaintiff fails to allege facts showing that Defendants Gaskill and Cunningham knowingly exposed Plaintiff to a prisoner with COVID-19. Initially, the Court notes that the prisoner had been released from quarantine and was presumably no longer contagious. Moreover, Plaintiff fails to allege facts showing that either Defendant Gaskill or Defendant Cunningham were responsible for the decision to house the newly released prisoner with Plaintiff. While the Court is sympathetic to the challenges that Plaintiff and other prisoners have faced while incarcerated during the COVID-19 pandemic, Plaintiff must plead enough factual content to permit the Court to draw a reasonable inference that Defendants Gaskill and Cunningham were deliberately indifferent to the risk of COVID-19 transmission and, therefore, violated the Eighth Amendment. *See Iqbal*, 556 U.S. at 679. Plaintiff has not done so here. Plaintiff's Eighth Amendment claims will, therefore, be dismissed.

**Conclusion**

Having conducted an initial review of Plaintiff's complaint, the Court determines that Defendants Felver and Vanderheuvel will be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against Defendants Gaskill and Cunningham. Plaintiff's retaliation claims against Defendants Gaskill and Cunningham remain in the case.

An order consistent with this opinion will be entered.

Dated: June 24, 2024                    /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         CHIEF UNITED STATES DISTRICT JUDGE